**UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SANDRA MCCANDLESS,

    Plaintiff,

v.

STANDARD INSURANCE COMPANY,

    Defendant.

_____ /

CASE NO. 2:08-cv-14195

HON. MARIANNE O. BATTANI

**OPINION AND ORDER DENYING PLAINTIFF'S AND DEFENDANT'S
MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD
AND REMANDING THE CASE TO THE PLAN ADMINISTRATOR**

**I.    INTRODUCTION**

This matter is before the Court on Plaintiff Sandra McCandless' Motion for Summary Judgment (Doc. 155) and Defendant Standard Insurance Company's ("Standard's") Motion for Judgment on the Administrative Record (Doc. 156).  McCandless brought suit under the Employee Retirement Income Security Act ("ERISA") and seeks review of Standard's denial of long term disability benefits.  The parties previously filed cross motions for judgment on the administrative record, and on February 15, 2011, this Court granted Standard's motion and denied McCandless' motion.  (Doc. 115.)  On appeal, the Sixth Circuit reversed and remanded for the completion of an independent medical evaluation ("IME") and for further consideration of McCandless' claim.  After evaluation of the IME, Standard denied the claim for a second time.  Because McCandless was denied the opportunity at this stage to offer evidence in rebuttal of the IME, this Court

granted her motion to supplement the administrative record and remanded again to the plan administrator.  (Doc. 148.)  After review, Standard denied McCandless' claim for a third time.  For the reasons that follow, the court **DENIES** McCandless' and Standard's motions and **REMANDS** the case to the plan administrator.

## II.     STATEMENT OF FACTS

Plaintiff Sandra McCandless worked for Countrywide Home Loans as a manager.  Countrywide provided a Group Long Term Disability Insurance Policy ("the Policy") for its employees pursuant to ERISA.  Standard administered the Policy, both determining eligibility for benefits and paying benefits.  In February 2005, McCandless went on medical leave for major depression.  In April 2005, McCandless applied for and received disability benefits for the period covering February 2, 2005, to July 31, 2007, the maximum time period allowed under the Policy for mental health claims.

Standard notified McCandless in January 2006 that her long-term disability ("LTD") benefits for her mental disorder would expire on July 31, 2007, and encouraged her to submit a claim for disability by a physical condition.  In response, McCandless requested that Standard consider a LTD claim based on her ankylosing spondylitis ("AS"), an inflammatory disease that causes back pain, progressive stiffness of the spine, arthritis, and fusing of certain joints.  McCandless submitted supporting records from her treating physician, as well as MRI and x-ray reports.  After multiple reviews of the medical documentation, including reviews by a neurologist and a rheumatologist, Standard denied McCandless continuation of LTD benefits in March 2008.  (AR 00126.) In the denial letter, Standard emphasized that McCandless' failure to see a rheumatologist significantly contributed to her failure to satisfy the Policy's "Care of a

Physician" provision, which mandates that claimants receive care from a medical specialist.  (Id.)

After exhausting her administrative remedies, McCandless filed the present suit in September 2008.  The parties filed cross-motions for judgment on the administrative record, and this Court granted Standard's motion, affirming the denial of LTD benefits.  McCandless appealed to the Sixth Circuit, which reversed and remanded the matter in order for Standard to have McCandless evaluated by a rheumatologist.  The Sixth Circuit found that Standard "never told McCandless that she would be ineligible for benefits if she did not see a rheumatologist."  McCandless v. Standard Ins. Co., 509 F. App'x 443, 448 (6th Cir. 2012).  In addition, Standard "did not exercise its authority under the Policy to have a rheumatologist conduct an independent medical evaluation of McCandless."  Id.  Thus, the decision was arbitrary and capricious because Standard knew McCandless suffered from AS and failed to base its decision on an IME from a rheumatologist.  Id.  Finally, the Sixth Circuit instructed that the case be remanded to "the plan administrator for a full and fair review of McCandless' claim, which presumably will include a rheumatology evaluation."  Id. at 449.

On April 10, 2013, McCandless was evaluated by Lewis Rosenbaum, M.D., a rheumatologist hired on behalf of Standard.  (AR 00993.)  Based on his examination, Dr. Rosenbaum diagnosed McCandless with chronic pain syndrome secondary to major depressive disorder; AS limited to fusion of the sacroiliac joints and associated uveitis; sinus tachycardia; major depressive disorder; alleged history of myopericarditis; and alleged history of restrictive lung disease.  Standard received the IME report on May 9, 2013.  On June 10, 2013, Standard issued its decision denying benefits.  (AR 00955.)

3

Shortly thereafter, McCandless underwent a series of consults with medical specialists, such as a rheumatologist, pulmonologist, and cardiologist. (See AR 0001438-66.) She then filed a motion, which the Court granted on October 28, 2013, to open the administrative record in order to submit this evidence to rebut Dr. Rosenbaum's IME. (Doc. 148.) Standard issued another denial on March 3, 2014, stating that many of these records post-dated the expiration of McCandless's benefits on July 31, 2007. (AR 0001389.) The parties now seek review of this latest denial and have filed cross-motions for judgment on the administrative record.

### III. STANDARD OF REVIEW

A district court reviews an ERISA plan administrator's denial of benefits *de novo*, unless the plan gives the administrator discretionary authority to determine eligibility for benefits. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Cox v. Standard Ins. Co., 585 F.3d 295, 299 (6th Cir. 2009). If the plan gives the administrator discretionary authority, the Court applies the highly deferential "arbitrary and capricious" standard of review. Cox, 585 F.3d at 299. "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Schwalm v. Guardian Life Ins. Co. of Am., 626 F.3d 299, 308 (6th Cir. 2010) (quoting Shields v. Reader's Digest Ass'n, Inc., 331 F.3d 536, 541 (6th Cir. 2003)). That is, even where a claimant has introduced evidence that might be sufficient to support a finding of disability, the decision is neither arbitrary nor capricious if it is the result of a deliberate, principled reasoning process and is supported by substantial evidence. Id.

4

"Deferential review is tempered, however, when an important conflict of interest consideration requires that benefits decisions be closely scrutinized." Cox, 585 F.3d at 299.  When the plan administrator both determines eligibility for benefits and also pays those benefits, an inherent conflict of interest arises that must be weighed as a factor in the court's determination. Id.  The existence of such a conflict does not heighten the standard of review but rather is "one factor among many that a reviewing judge must take into account." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 116 (2008).  Here, the Policy contains language sufficient to grant discretion to Standard.  Further, Standard both grants eligibility for benefits and pays benefits. Therefore, the Court reviews this case under the highly deferential "arbitrary and capricious" standard, while bearing in mind that a structural conflict of interest exists.

### IV.   DISCUSSION

In accordance with the Court's previous order, McCandless supplemented the administrative record with evidence in rebuttal of the IME performed by Dr. Rosenbaum. McCandless visited rheumatology specialist Bernard Rubin, D.O., on July 2, 2013.  His assessment indicates a diagnosis of AS based on marked kyphosis of the thoracic spine, flattening of the lower lumbar spine, abnormal Schober's test, and a markedly decreased Patrick-Fabere test.  (AR 0001442-44.)  Dr. Rubin ordered x-rays and consults with other specialists.  The x-rays, dated July 16, 2013, demonstrate that McCandless' AS has progressed to the lumbar and thoracic spine.  (AR 0001438-40.)

McCandless consulted with pulmonologist Michael Eichenhorn, M.D., on July 17, 2013.  Based on his examination and the results of a spirometry test, Dr. Eichenhorn concluded that McCandless suffers from severe airflow restriction and shortness of

breath caused by very limited thoracic expansion due to her AS.  (AR 0001446-47.) McCandless also consulted on July 23, 2013, with cardiologist Deirdre Mattina, M.D., who observed mild respiratory distress and tachycardia with no ectopy or murmurs. (AR 0001450-53.)  Although Dr. Mattina was concerned about prior evidence of pericardial effusion, she felt that McCandless' symptoms were largely attributable to her restrictive lung disease.  (Id.)  A second cardiologist, Marc Lahiri, M.D., rendered a similar opinion.  (AR 0001461-62.)  In light of these consults, Dr. Rubin opined, "[t]here is no doubt that she has severe ankylosing spondylitis complicated by cardiac, eye, and lung abnormalities."  (AR 0001465-66.)

These findings and opinions directly contradict some of Dr. Rosenbaum's April 20, 2013, IME findings.  Specifically, Dr. Rosenbaum doubted progression of AS beyond the sacroiliac joint, given a preserved lumbar lordosis and a normal Schober's test.  (AR 01005.)  These observations, he wrote, would argue against significant involvement of the lumbar spine, and AS does not typically "skip over" the lumbar spine and then become severe in the thoracic and cervical spine.  (Id.)  However, as noted above, McCandless' recent x-rays demonstrate progression of her AS to the lumbar and thoracic spines, as evidenced by fusion of the bilateral sacroiliac joints, interspinous calcification, and ossification along the anterior longitudinal ligament.  (AR 0001438-40.) Dr. Rosenbaum was also skeptical of an alleged restrictive pulmonary disorder related to thoracic cage ankylosis.  (AR 01006.)  He noted the lack of radiological evidence and speculated that the limited thoracic expansion on examination may have been caused by McCandless' failure to take a deep breath.  (Id.)  In contrast, Dr. Eichenhorn found a

6

very limited thoracic expansion attributable to AS and did not note any intentionally poor effort on McCandless' part.  (AR 0001447.)

In denying McCandless' claim in June 2013, Standard primarily relied on Dr. Rosenbaum's IME.  (See AR 00955-58.)  Standard's March 2014 denial dismissed much of the newly submitted evidence in a rather conclusory fashion because it post-dates the closure of McCandless' claim by more than a year and therefore "do[es] not provide evidence of a condition of a severity to cause disability" during the relevant insured period.  (AR 0001390.)  However, it is possible that the x-ray evidence and physician interpretations could shed light on McCandless' condition prior to the closure of her claim on July 31, 2007.  Standard did not submit this evidence to its medical experts for consideration of this matter.  Nor did Standard provide any rationale in its decision resolving inconsistencies between the new evidence and the IME or explaining why it finds the IME more credible than the new evidence.  Standard's briefing before this Court provides rationale discrediting the new evidence.  Such post hoc rationale, however, is not entitled to deference.  See Univ. Hosps. v. Emerson Elec. Co., 202 F.3d 839, 849 n.7 (6th Cir. 2000).  According to University Hospitals:

> [I]t strikes us as problematic to, on one hand, recognize an administrator's discretion to interpret a plan by applying a deferential "arbitrary and capricious" standard of review, yet, on the other hand, allow the administrator to "shore up" a decision after-the-fact by testifying as to the "true" basis for the decision after the matter is in litigation, possible deficiencies in the decision are identified, and an attorney is consulted to defend the decision by developing creative post hoc arguments that can survive deferential review. The concerns inherent in this scenario are even more pronounced where, as here, the administrator has a financial incentive to deny benefits. To depart from the administrative record in this fashion would, in our view, invite more terse and conclusory decisions from plan administrators, leaving room for them -- or, worse yet, federal judges -- to brainstorm and invent various proposed "rational bases" when their decisions are challenged in ensuing litigation. At a minimum, if we

> permit such rehabilitation of the administrative record, there no longer is any reason why we should not apply a more searching **de novo** review of the administrator's decision.

Id. (emphasis in original). Additionally, as McCandless argues, it is contradictory that Standard affords weight to Dr. Rosenbaum's IME, performed in April 2013, while it refuses to consider the reports submitted by McCandless, which were also rendered in 2013.

Standard also fails to address in its denials McCandless' award of Social Security disability benefits. The Social Security Administration found McCandless to be disabled as of February 1, 2005, based on a combination of physical and mental impairments. (Doc. 102, Ex. 1.) While the Sixth Circuit has upheld denials of ERISA benefits although the claimant had been declared disabled by the Social Security Administration, failure by an insurer to consider a favorable Social Security decision has been a factor supporting the finding of an arbitrary and capricious denial. See Cox, 585 F.3d at 302-03. Failure to explain adequately the grounds of a decision, including a failure to address evidence, is grounds for remand. See Shelby County Health Care Corp. v. Majestic Star Casino, LLC, 581 F.3d 355, 373 (6th Cir. 2009); Caldwell v. Life Ins. Co. of N. Am., 287 F.3d 1276, 1285-86 (10th Cir. 2002).

"Where a district court determines that the plan administrator erroneously denied benefits, a district court 'may either award benefits to the claimant or remand to the plan administrator.'" Shelby, 581 F.3d at 373 (citing Elliott v. Metro. Life Ins. Co., 473 F.3d 613, 621 (6th Cir. 2006). If the deficiency is the decision-making process, rather than the claimant being clearly entitled to benefits, the appropriate remedy is remand to the plan administrator. Elliott, 473 F.3d at 622. Here, the evidence is not so one-sided as

8

to entitle McCandless undoubtedly to benefits. Therefore, remand to the plan administrator for further consideration of the new evidence is warranted and proper.

Lastly, the Policy provisions guarantee that "[t]he person conducting the review will be someone other than the person who denied the claim and will not be subordinate to that person. The person conducting review will not give deference to the initial denial decision." (AR 00044.) McCandless observed that the same benefits review specialist, Sandra Johnson, reviewed and prepared the previous two denials – on June 10, 2013, after the IME, and on March 3, 2014, after submission of new evidence to the administrative record. (AR 00955-58, 0001389-91.) On remand, Standard must comply with the terms of the Policy and assign review of the case to a different benefits review specialist.

## IV. CONCLUSION

Because of the identified defects in the procedural decision-making process, the Court **DENIES** both parties' motions and **REMANDS** this case to the plan administrator for further consideration consistent with this opinion.

**IT IS SO ORDERED.**

Date: September 15, 2014
s/Marianne O. Battani
MARIANNE O. BATTANI
United States District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 15, 2014.

s/ Kay Doaks
Case Manager